# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2021 CA 1277

## GULFCO OF LOUISIANA, LLC, D/B/A TOWER LOAN OF CUT OFF

## VERSUS

## ASHLEY B. CHERAMIE, A/K/A ASHLEY CHERAMIE AND NICHOLAS CHERAMIE

Judgment Rendered: **APR 2 6 2022**

* * * * *

APPEAL FROM THE SEVENTEENTH JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF LAFOURCHE
STATE OF LOUISIANA
DOCKET NUMBER 133694

HONORABLE STEVEN M. MILLER, JUDGE PRESIDING

* * * * *

| | |
|---|---|
| Jessica L. Greber<br>Shreveport, LA | Attorneys for Plaintiff-Appellant<br>Gulfco of Louisiana, LLC d/b/a<br>Tower Loan of Cut Off |
| Ashley B. Cheramie<br>Golden Meadow, LA | Defendant-Appellee,<br>In Proper Person |
| Nicholas Cheramie<br>Golden Meadow, LA | Defendant-Appellee,<br>In Proper Person |

* * * * *

BEFORE: McDONALD, LANIER, AND WOLFE, JJ.

**McDONALD, J.**

This is an appeal from a judgment in favor of the borrower after a trial on the merits regarding two check loans. After review, we reverse and render judgment in favor of the holder.

### FACTS AND PROCEDURAL HISTORY

Gulfco of Louisiana, LLC d/b/a Tower Loan of Cut Off (Gulfco), is the holder of two loans owed by Ashley B. Cheramie. The loans resulted from two "check loans" made out to Ms. Cheramie for $2,503.93 each, which were mailed to Ms. Cheramie as a solicitation. Ms. Cheramie deposited the checks at her bank to borrow the money on December 31, 2015 and April 26, 2017. Ms. Cheramie made most of the payments on the first check loan, leaving a principal balance of $223.18 due, plus interest. Ms. Cheramie made no payments on the second check loan.

Thereafter, on September 25, 2017, Gulfco filed suit against Ms. Cheramie and her husband, Nicholas Cheramie. Gulfco maintained that Ms. Cheramie owed an unpaid balance of $223.18 on the first check loan, together with 31.65 percent interest per annum for one year starting on April 3, 2017, 18 percent per annum thereafter, until paid in full, as well as costs and attorney fees. On the second loan Gulfco maintained that Ms. Cheramie owed an unpaid balance of $2,897.43, together with 31.65 percent interest per annum for one year starting on September 13, 2017, 18 percent interest per annum thereafter, until paid in full, plus $10.50 in late charges, as well as costs and attorney fees. Gulfco attached copies of both checks signed by Ms. Cheramie and processed by her bank, along with lost note affidavits from Gulfco's branch manager, attesting that the documents were true and correct copies. Gulfco maintained that the debts were incurred during the Cheramies' marriage and were a community obligation. Gulfco prayed for judgment in its favor against Ashley and Nicholas Cheramie for the debts, including interest, late charges, costs, and attorney fees.

2

Nicholas Cheramie answered the petition, generally denying most of the allegations. In his answer to the request for admissions of fact, Nicholas Cheramie denied that the parties had a community of acquets and gains at the time the loans were taken out and maintained that the parties had a prenuptial agreement. The prenuptial agreement between Ashley and Nicholas Cheramie, dated January 19, 2005, was attached.

Ms. Cheramie answered the petition, generally admitting most of the allegations. She maintained that she and Nicholas had a prenuptial agreement in place, that Nicholas had no knowledge of the note, and that he did not sign the note. She admitted the amount due on the first note was $223.18, with interest at 31.65 percent for one year beginning April 3, 2017, and thereafter at the rate of 18 percent per annum, until paid in full, and for all costs and reasonable attorney fees as set by the court. Ms. Cheramie admitted that the amount due on the second note was $897.43,[1] together with interest at the rate of 31.65 percent per annum for one year beginning September 13, 2017, and thereafter at the rate of 18 percent per annum, until paid in full, along with $10.50 in late charges, all costs, and reasonable attorney fees set by the court.

Gulfco filed a motion for summary judgment asserting that it was entitled to a judgment against Ms. Cheramie as a matter of law. Gulfco attached copies of the two check loans signed by Ms. Cheramie, along with lost note affidavits from its branch manager certifying that the documents were true and correct copies and were a reproduction of its records maintained on file in the course of its business. Gulfco also attached an affidavit of the correctness of the account from its branch manager, and an affidavit asking for attorney fees in the amount of 25 percent of the unpaid debt after default.

---

[1] This appears to be a typographical error as the balance stated in the petition was $2,897.43.

The summary judgment was apparently denied, as the matter proceeded to a trial on the merits against Ms. Cheramie.[2] Gulfco was the only party present at the trial. Gulfco introduced copies of the two check loans signed by Ms. Cheramie into evidence. Gulfco's branch manager testified that the original check loans were deposited at Ms. Cheramie's bank and destroyed. At the close of the trial, the trial court found that Gulfco had presented insufficient evidence of the loans and denied Gulfco's claims. The trial court signed a judgment in favor of Ms. Cheramie and against Gulfco on June 1, 2021. Gulfco appealed that judgment.

Gulfco makes the following assignment of error on appeal.

> The trial court erred in finding that there was insufficient evidence to support enforcement of the instruments sued upon, and by failing to accept the reproductions of the instruments as "prima facie proof of [their] contents with the same force and effect as though the original document[s] were produced," pursuant to [La. R.S. 13:3733.1C]. The trial court's decision imposes an additional evidentiary burden upon financial institutions to show an apparent "chain of custody" when seeking enforcement of negotiable instruments. This additional burden of proof is not required or even contemplated under the provisions of [La. R.S. 13:3733.1]. More importantly, there is no "chain of custody" rule for civil matters in Louisiana.

## DISCUSSION

Questions of law are reviewed *de novo*. **City of Baton Rouge/Parish of East Baton Rouge v. Myers,** 2013-2011 (La. 5/7/14), 145 So.3d 320, 327. The issue herein is whether the trial court correctly interpreted and applied the law. **Harris v. Metropolitan Life Ins. Co.,** 2009-0034 (La. App. 1 Cir. 2/5/10), 35 So.3d 266, 273.

A check loan is a pre-approved loan offer made through a home solicitation by mail. When Ms. Cheramie endorsed the checks and deposited them into her bank account, she created loans that must be repaid pursuant the terms described in the check loan offer disclosures, which were attached to the check. See La. R.S. 9:3541.1A(2).

---

[2] The record before us does not contain a ruling on the motion for summary judgment, nor does it contain a dismissal of the claims against Nicholas Cheramie.

4

The front of the check loans at issue herein include a warning in accordance with La. R.S. 9:3541.1:[3]

WARNING: THE CASHING OF THIS CHECK WILL ENROLL YOU IN A PROGRAM OR A LOAN, OR WILL CAUSE YOU TO BE BOUND TO REPAY THE LOAN OR PURCHASE GOODS OR SERVICES WHICH MAY COST YOU ADDITIONAL MONEY. PROPER ENDORSEMENT REQUIRED. NON-TRANSFERABLE.

The back of the check loans above the borrower's signature line signed by Ms. Cheramie states:

BY ENDORSING THIS INSTRUMENT YOU AGREE TO REPAY THIS LOAN ACCORDING TO THE TERMS OF THE CONSUMER PROMISSORY NOTE AND DISCLOSURE STATEMENT ACCOMPANYING THIS CHECK WHICH YOU ACKNOWLEDGE RECEIVING AND WHICH PROVIDES YOU WITH ADDITIONAL CONTRACT TERMS IN CONNECTION WITH THIS LOAN TRANSACTION. INCLUDING AN ARBITRATION AGREEMENT.

The check loans also include a disclosure form page that was attached to them, and which provides the terms of the loans.

Louisiana Code of Evidence article 901A provides that authentication or identification is satisfied by a showing that a matter in question is what a proponent claims. Authentication can be satisfied by the testimony of a witness with knowledge. La. C.E. art. 901B(1). Louisiana Revised Statutes 13:3733.1B provides that any financial institution may reproduce any of its original records used by such financial institution during the course of its regular business activities and may thereafter destroy the original record in the regular course of its business activities. Additionally, La. R.S. 13:3733.1G(2) provides that a reproduction of a check that has been destroyed by a financial institution in the regular course of its business activities shall be deemed to be an original of such check in a judicial proceeding or

---

[3] La. R.S. 9:3541.1E provides that such a check shall contain the following language as a conspicuous caption: WARNING: THE CASHING OF THIS CHECK WILL ENROLL YOU IN A PROGRAM OR A LOAN, OR WILL CAUSE YOU TO BE BOUND TO REPAY THE LOAN OR PURCHASE GOODS OR SERVICES WHICH MAY COST YOU ADDITIONAL MONEY.

action involving a claim based on or involving such check.[4] Louisiana Revised Statutes 13:3733.1C provides that reproductions made pursuant to that statute shall be received as prima facie proof of its contents with the same force and effect as though the original document were produced, and shall be deemed authentic for all purposes, thereby satisfying the requirements of La. C.C. art. 901.

Gulfco attached copies of the signed check loans, lost note affidavits, and an affidavit of correctness of account to its petition. Gulfco's branch manager, Erica Terrebonne, testified at trial regarding the amount of the check loans, the payments made, and the balances due. Gulfco introduced copies of the signed check loans and payment statements into evidence at trial.

Ms. Terrebonne testified that Gulfco was the holder of the check loans, and the check loans were payable to Ms. Cheramie. Ms. Terrebonne testified that Ms. Cheramie endorsed the check loans and then deposited them into her State Bank & Trust account. She testified that Gulfco did not get the original signed check loans and disclosure statements back because they were destroyed by Ms. Cheramie's bank; that Gulfco received copies of the endorsed check loans from State Bank & Trust; and that true and correct copies of the signed check loans and disclosure statements were kept in the regular course of Gulfco's business. Ms. Terrebonne testified that Ms. Cheramie made most of the payments on the first loan, but left a balance of $223.18 unpaid, and was therefore in default on the first loan under the

---

[4] In order for a document to be a negotiable promissory note, it must meet the requirements of La. R.S. 10:3-104. These are (1) be signed by the maker or drawer; (2) contain an unconditional promise or order to pay a sum certain in money; (3) be payable on demand or at a definite time; and (4) be payable to order of bearer. **Dixie Web Graphic Corp. v. Sharp**, 619 So.2d 1173, 1175 (La. App. 1 Cir.1993).

terms of the contract. Ms. Terrebonne testified that on the second loan, Ms. Cheramie made no payments, and the loan was accelerated upon default. Ms. Terrebonne testified that the balance due on loan number two was $2,514.43.[5]

After de novo review, we find that Gulfco clearly presented sufficient evidence of the check loans and that the trial court legally erred by finding otherwise. Thus, we reverse the trial court judgment and we render judgment in favor of Gulfco.

## CONCLUSION

For the foregoing reasons, the trial court judgment denying all relief prayed for by Gulfco of Louisiana, LLC d/b/a Tower Loan of Cut Off is reversed, and judgment is rendered in favor of Gulfco of Louisiana, LLC d/b/a/ Tower Loan of Cut Off and against Ashley B. Cheramie in the amount of $223.18, with interest at the rate of 31.65 percent per annum for one year beginning April 3, 2017, and thereafter at the rate of 18 percent per annum, and in the amount of $2,514.43, with interest at the rate of 31.65 percent per annum for one year beginning September 13, 2017, and thereafter at the rate of 18 percent per annum, and for $10.50 in late charges, and for attorney fees of $684.40.[6] Costs of this appeal are assessed against Ashley B. Cheramie.

**REVERSED AND RENDERED.**

---

[5] The payoff statement for the second check loan shows that the total to pay off the second check loan was calculated with a beginning balance of $3,150.00, which included a finance charges of $646.07. After Ms. Cheramie defaulted on the second check loan and the loan was accelerated, the finance charge was refunded, leaving a balance of $2,503.93. A late charge of $10.50 was added, for a total $2,514.43 payoff balance.

[6] Attorney fees are calculated herein at 25 percent of the unpaid balance due on the loans, $223.18 on the first loan and $2,514.43 on the second loan, for a total unpaid balance of $2,737.61.